AO 91 (Rev 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Phillip Anthony Seymour, Jr.<br><br>*Defendant(s)* | )<br>)<br>) Case No. 20-6552-HUNT<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  October 23, 2020  in the county of  Broward  in the Southern District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952(a) and 960(a)(1) and (b)(1)(B) | knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, in violation of Title 21, United States Code, Section 952(a), and pursuant to Title 21, United States Code, Section 960(b)(1)(B), it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Gabriel A. Ortiz, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

*Judge's signature*

Date:  10/24/2020

City and state:  Fort Lauderdale, Florida    Patrick M. Hunt, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Gabriel A. Ortiz, being first duly sworn, hereby state as follows:

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). Investigations. I have been a Special Agent since September 2009. I am assigned to the Fort Lauderdale Office in Broward County, Florida. As a Special Agent, I am responsible for investigating violations of federal law relating to immigration and customs enforcement. In my current assignment, I am also responsible for investigations involving the importation and distribution of controlled substances and the possession and concealment of such controlled substances. I have received specialized training in narcotic-related investigations. I have been involved in the execution and planning of narcotic-related arrests for over nine (9) years. I have successfully completed the Criminal Investigator Training Program (CITP) and Immigration and Customs ("ICE") Special Agent Training Program (ICESAT) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.

2. I make this affidavit in support of a criminal complaint charging Phillip Anthony Seymour, Jr. ("SEYMOUR") with knowingly and intentionally importing into the United States, from a place outside thereof, a controlled substance, in violation of Title 21, United States Code, Section 952(a), and pursuant to Title 21, United States Code, Section 960(b)(1)(B), and it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.

3. I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including others who have investigated this matter and/or have personal knowledge of the facts herein. Because this Affidavit is being submitted for the

limited purpose of establishing probable cause for the requested criminal complaint, it does not include every fact known to me about this matter. However, no information known to me that would tend to negate probable cause has been withheld from this Affidavit.

4. On October 23, 2020, at approximately 10:15 p.m., Customs and Border Protection ("CBP") Marine Interdiction Agents ("MIA") Aaron Adelsperger, Daren Sims and Mark Samples, were conducting routine marine patrol when they came upon a boat in the intracoastal waters near the 17th street inlet, in Fort Lauderdale, Broward County, Florida. The CBP agents decided to approach the vessel for further investigation. The agents observed the vessel was displaying a Bahamian flag and its navigational lights were barely visible. The agents observed two black males, later identified as Phillip Anthony Seymour, Jr. ("SEYMOUR") and Deeve Valano Saunders ("SAUNDERS"), onboard the vessel. Agent Sims asked SAUNDERS how many people were onboard, where they were coming from, and where they were headed to. SAUNDERS replied there were only the two of them onboard, they arrived from Nassau (Bahamas) and they were headed to Billfish Marina. Agent Sims also asked them if they had anything to declare bringing into the United States and SAUNDERS said no.

5. Agent Sims maintained control of SEYMOUR and SAUNDERS while Agent Samples conducted a border search of the vessel. During the search, Agent Samples observed a black Timberland gym bag ("BAG") on a bed inside one of the below cabins. Agent Samples unzipped the BAG and observed SEYMOUR's Bahamian passport inside the BAG on top of a towel. Agent Samples moved the towel and observed thirteen (13) brick-shaped packages wrapped in white and grey plastic inside the BAG. Through his knowledge and experience, Agent Samples believed the packages contained cocaine. After finding the cocaine, Agent Samples went above deck, informed the other agents that he found cocaine, and placed

2

SEYMOUR under arrest. Shortly thereafter Agent Sims placed SAUNDERS under arrest, and they instructed Agent Adelsperger to return to shore and pick up other agents for backup. Shortly thereafter CBP agents notified Homeland Security Investigations and requested assistance with the investigation. The CBP agents remained in the water on the vessel with SEYMOUR and SAUNDERS until HSI Agents arrived.

6. At approximately 11:20 p.m., HSI Agent Gabriel A. Ortiz, HSI Agent Daniel Evans and HSI Task Force Officer Todd Nichols were transported to the vessel to further the investigation.

7. After boarding the vessel, the HSI Agents advised SEYMOUR of the *Miranda* rights. SEYMOUR advised he understood his *Miranda* rights and agreed to waive them and speak with law enforcement personnel without the presence of an attorney. HSI agents interviewed SEYMOUR on the vessel and again later in a CBP office, the latter of which was audio recorded. During the post-*Miranda* interviews, SEYMOUR stated, in substance, the following: SEYMOUR stated that he and SAUNDERS were given a job of transporting the vessel from Nassau, Bahamas to the Billfish Marina (located in Florida). SEYMOUR was to receive $1,000 for transporting the vessel. On Thursday night, just before boarding the vessel, he was approached at Bay Street marina, Nassau, Bahamas, by an unknown black male ("UM") who was carrying a firearm on his person. The UM wanted SEYMOUR to take narcotics to Florida and said someone in the U.S. would call him (SEYMOUR) once they arrived at their destination with further instructions. Agents asked SEYMOUR how the UM would call him if the UM did not have his (SEYMOUR's) number, and SEYMOUR said he was not sure but maybe the UM could find it on social media. The UM informed SEYMOUR that he had information about him and would harm him if he (SEYMOUR) refused to do what the UM

3

wanted. SEYMOUR recalled the UM telling him that if he didn't "carry this" that "ya'll will start dropping like flies," which SEYMOUR believed to be a threat against him and his family. SEYMOUR stated the encounter became aggressive during which the UM's firearm became visible. SEYMOUR agreed to transport the narcotics to the U.S. The UM asked SEYMOUR what marina they were going to and what was their ETA (Estimated Time of Arrival), which SEYMOUR provided as 11:30 p.m. The UM placed the narcotics, which SEYMOUR believed to be cocaine, from his (UM's) bag into SEYMOUR's bag and SEYMOUR boarded the vessel. SEYMOUR stated SAUNDERS was on the vessel and did not witness his encounter with the UM.

8. SEYMOUR stated SAUNDERS had no knowledge about the narcotics he (SEYMOUR) brought on the vessel. SEYMOUR estimated the trip to Florida took 18 to 20 hours. SEYMOUR stated they were stopped by the CBP officers in the water at or near Port Everglades while coming around a curve. He stated the officers asked them where they were coming from and they stated Nassau (Bahamas). After boarding the vessel, one of the officers went below deck to perform a search while he and SAUNDERS remained upstairs. Shortly thereafter the officer came back upstairs and informed them they were under arrest. The officers asked SEYMOUR if he was aware of the narcotics inside of his bag and he said yes. Later on, an officer asked SEYMOUR how much he was going to get paid for the narcotics and he said the UM said he was going to receive a "reward" or suffer the consequences, but did not say how much the "reward" would be.

9. SAUNDERS was read his *Miranda* rights and he advised he understood his *Miranda* rights and agreed to waive them and speak with law enforcement personnel without the presence of an attorney. HSI agents interviewed SAUNDERS on the vessel and again later in a

4

CBP office, the latter of which was audio recorded. During the post-*Miranda* interviews, SAUNDERS stated in substance the following: He and SEYOUR got a job to deliver the vessel from Nassau, Bahamas to Billfish Mmarina in Fort Lauderdale, Florida. They slept on the boat Thursday night to begin the trip early Friday. SAUNDERS said he did not observe SEYMOUR interacting with anyone at the marina in Nassau the night before they left. He stated SEYMOUR only had his black bag and a plate of food when he boarded the vessel and did not mention anything about narcotics. He said Friday night they were pulled over by law enforcement officers at the entrance to Port Everglades, Florida, and placed under arrest for what he later found out were narcotics found in SEYMOUR's bag.

10. Law enforcement officers conducted a field test of the contents of one of the thirteen (13) brick-shaped packages wrapped in white and grey plastic recovered from inside SEYMOUR's BAG. The field test resulted in a positive indication for the presence of cocaine. The weight of the thirteen (13) packages was approximately thirteen (13) kilograms.

11. WHEREFORE, based on the foregoing facts, I respectfully submit that probable cause exists to believe that on October 23, 2020, in Broward County, in the Southern District of Florida, Phillip Anthony Seymour, Jr., did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, in violation of Title 21, United States Code, Section 952(a), and pursuant to Title 21, United States Code, Section 960(b)(1)(B), it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine.

_____
Gabriel A. Ortiz, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1

5

by telephone on this 24th day of October, 2020.

                                                                                       PATRICK M. HUNT
                                                                                       UNITED STATES MAGISTRATE JUDGE